UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DICSON OBEL AGUILAR-MAZARIEGOS,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, Secretary of the Department of Homeland Security, et al.,<br>Respondents. | Case No.: 26cv3758-LL-AHG<br>**ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS**<br>[ECF No. 5] |

Before the Court is Petitioner Dicson Obel Aguilar-Mazariegos's Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 5 ("Pet."). Respondents filed a Response [ECF No. 6], and Petitioner filed a Traverse [ECF No. 7]. For the reasons set forth below, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus.

## I. BACKGROUND

Petitioner is a citizen of Honduras who entered the United States in 2018 when he was 16 years old. Pet. at 2; *see also* Exh. A to Pet., Declaration of Dicson Obel Aguilar-Mazariegos ("Decl."). On November 9, 2018, Petitioner went to a port of entry, along with his father and brother, and asked for asylum. Pet. at 2; Decl. ¶ 2. Petitioner was held in

custody for eight days before being released on conditional parole. Pet. at 2; Decl. ¶ 2. After his release, Petitioner went to Miami, Florida with his family and applied for asylum. Pet. at 2; Decl. ¶ 3. He has since attended all his check-in appointments and complied with the conditions of his release. Pet. at 2, 4; Decl. ¶ 3. Since his release, Petitioner has obtained a work permit and Social Security number. Pet. at 2, 4; Decl. ¶ 3. On May 4, 2026, Immigration and Customs Enforcement ("ICE") detained Petitioner without any notice or opportunity to be heard. Pet. at 2; Decl. ¶ 4. Petitioner has no criminal record. Pet. at 2; Decl. ¶ 3.

On July 7, 2026, Petitioner filed the instant Amended Petition, claiming that the revocation of his parole without proper notice, reasoning, and a pre-deprivation hearing violates the Administrative Procedures Act and the Fifth Amendment's Due Process Clause. Pet. at 3–7.

Respondents argue in the Response that they "concede Petitioner was previously released from immigration custody on parole, however, Respondents have insufficient information regarding whether [his] parole terminated or expired to provide to the Court." ECF No. 6 at 2. Respondents further argue that "Petitioner's habeas petition is ambiguous as to the parole authority he was released under, citing both 8 U.S.C. § 1182(d)(5) and 8 C.F.R. § 212.5 (e )(2)(i)." *Id.* Respondents argue that it is their position that Petitioner is subject to mandatory detention under § 1225(b)(2), but acknowledge that Courts in this District have repeatedly reached the opposite conclusion under the same and/or similar facts. *Id.* Respondents also state in their Response that "the government does not oppose the petition and defers to the Court on the appropriate relief." *Id.* at 3.

## II. LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his or her confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See* 8 U.S.C. § 1252; *see also Alvarez-Barajas v. Gonzales*, 418

F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process – for example, a claim of indefinite detention – federal habeas corpus jurisdiction remains in the district court. *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018).

## III. DISCUSSION

Petitioner argues that the summary revocation of his parole without justification or consideration of his individualized circumstances violates the Due Process Clause. Pet. at 6–7. Specifically, Petitioner argues that he was "entitled to notice of the reasons for revocation of his parole and a hearing before an immigration judge to determine whether detention is warranted before ICE revoked his parole." *Id.* at 6 (internal quotation and citation omitted). The Court agrees.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v.*

*Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi*, 792 F. Supp. 3d at 1032 (citing *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Petitioner entered the United States in 2018. Pet. at 2. Petitioner is not a newly arrived noncitizen seeking admission at the border. *Id.* Petitioner is not merely an "applicant for admission" at the border with minimal due process rights; he was previously released by the Government from custody in 2018 and has a protected liberty interest in remaining out of custody. *See, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1034 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164 (S.D. Cal. 2025) ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Alvarenga Matute v. Wofford*, 807 F. Supp. 3d 1120, 1128–29 (E.D. Cal. 2025) (finding petitioner had a protected liberty interest in his release). Respondents do "not oppose the petition and defer[] to the Court on the appropriate relief." ECF No. 6 at 3.

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Mathews* factors. *See id.* Courts must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the

Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The Court finds that all three factors support a finding that the Government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his initial release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690; *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by one's own government." (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))). Petitioner has an interest in remaining with his family. *See Morrissey*, 408 U.S. at 482 ("Subject to the conditions of his parole, he . . . is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing him a reason for revocation or giving him an opportunity to be heard. Pet. at 6–7. Since the determination that Petitioner should be released because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk . . . ." *Saravia*, 280 F. Supp. 3d at 1176. Respondents concede that Petitioner was previously released on conditional parole. *See* ECF No. 6 at 2. Respondents also state in their Return that "the government does not oppose the petition and defers to the Court on the appropriate relief." *Id.* at 3. "Where, as here, 'the petitioner

has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025)) (cleaned up).

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Pinchi*, 792 F. Supp. 3d at 1036; *Matute*, 807 F. Supp. 3d at 1130; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* ECF No. 6. Additionally, Respondents' argument that they have "insufficient information regarding whether Petitioner's parole terminated or expired to provide to the Court" does not overcome Petitioner's liberty interest. *See, e.g.*, *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (finding the government's argument unpersuasive that a noncitizen did not have a liberty interest where his one-year parole had expired shortly before he was re-detained); *see also Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1109 (E.D. Cal. 2025) ("Respondents point out that petitioner's parole expired… and that they were permitted to re-detain him under the statute and its implementing regulations. However, petitioner's liberty interest did not expire along with his parole." (citation omitted)).

Therefore, because Respondents detained Petitioner by revoking his release in violation of the Due Process Clause, his detention is unlawful.[1] *See, e.g.*, *Alegria Palma v. Larose et al.*, No. 25-cv-1942 BJC (MMP), slip op. at 7 (S.D. Cal. Aug. 11, 2025) (granting

---

[1] The Court declines to reach Petitioner's remaining argument that his detention violates the Administrative Procedure Act.

a TRO based on a procedural due process challenge to a revocation of parole without a pre deprivation hearing); *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *4–5 (S.D. Cal. Sep. 26, 2025) (granting a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).

Accordingly, the Court **GRANTS** Petitioner's Amended Petition.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's Amended Petition for Writ of Habeas Corpus [ECF No. 5]. The Court **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of his preexisting release. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his release and a hearing before a neutral decision maker to determine whether detention is warranted. Respondents shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.[2]

**IT IS SO ORDERED**.

Dated: July 29, 2026



Honorable Linda Lopez
United States District Judge

[2] This relief has been granted in similar matters. *See, e.g.*, *Matute*, 807 F. Supp. 3d at 1133; *Pinchi*, 792 F. Supp. 3d at 1038; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1096–97 (E.D. Cal. 2025); *Martinez Hernandez v. Andrews*, No. 25-CV-1035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025).